WESTERN DIST.
October, 1854.

HAWKINS *vs.* BROWN ET ALS.

HAWKINS
vs.
BROWN ET ALS.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, THE JUDGE
THEREOF PRESIDING.

Redhibitory defects or vices which are made known, by the vendor to the
vendee, at or before the sale, cannot be urged in avoidance, or in any
manner set up against the sale.

Parole evidence is admissible, to prove the declarations of a vendor, in
relation to the redhibitory vices of slaves, at or before the sale.

The mere legal agent, appointed to sell property, by authority of law, has
no powers but those conferred by law.

It is the duty of auctioneers, to receive the conditions of sale in writing,
from the vendor, and to read and proclaim them, in a loud and audible
voice, to the bystanders, and invite bids, in conformity therewith.

The administrator of an estate, is the legal vendor of the property at probate
sale, whose declarations are to govern, in regard to its conditions and
terms, and the legal warranty resulting therefrom.

The sale of property legally made by the administrator, binds the heirs in
warranty.

The conversations of bystanders, at a probate sale, with a purchaser, in
which he is apprised of redhibitory vices in the property, before it is bid
off, will not be admitted to exclude the legal warranty claimed, unless they
go to establish the fact, that the redhibitory vices complained of, had
been declared by the vendor to the purchaser.

The crier's declarations at a probate sale, unauthorised by the vendor, are
inadmissible in evidence, to show the buyer was thereby apprised of the
redhibitory vices in the property sold, before he bid for it.

The plaintiff sues as the representative and administrator
of the estate of Thomas Grimball, deceased, to recover the
amount of a note of three hundred and seventy dollars, and
one of fourteen dollars and twelve and a half cents, executed
by the defendant, Brown, as principal, and Flint as his surety.
The plaintiff alleges, that the first note was given as a part of
the price of two slaves, purchased by Brown, at the sale of
Grimball's succession.

53

The defendants severally excepted, and denied that the plaintiff was administrator, as he represents himself to be, which exceptions were overruled.

*Brown* admitted the execution of the notes, but alleged the slaves, for which one of the notes was given in part payment, were afflicted with redhibitory vices, which rendered them valueless, &c.

*Flint* admitted he signed the notes sued, as surety of his co-defendant, and set up the same defence.

The evidence shows, that the slaves, for which the note of three hundred and seventy dollars was given in part payment of the price, were purchased at the probate sale of Thomas Grimball's succession, by Brown. One of them sold for seven hundred and eleven dollars, and the other for four hundred dollars. Flint endorsed the notes for his co-defendant, and finally took the slaves into his possession.

The defendants claim a rescission of the sale, on account of redhibitory defects in the slaves, at the time they purchased them.

" Stafford, sworn for plaintiff, says, he attended the sale of Thomas Grimball's succession. That Joseph Scott and Joseph Boon cried the sale of the negroes in question. *Witness was told by Mr. Grimball, to tell Boon,* who was crying the negroes, that one of them, (naming him) was not sound, *which was proclaimed by Boon.* Judge Scott, the parish judge, was present, but appeared unwell. These slaves were not sold for near as much as others, on account of their sickness and defects. Witness told Brown, that one of the slaves was sickly, had a bad cough, and discharged blood. This was the day before the sale, and he told him the same thing on the day of sale. Witness would have bid three hundred dollars more for him, had he been sound. Witness bid five hundred dollars for the boy. The negro himself told Brown, he had a bad cough and discharged blood. The other negro is crippled, and was so at the time of sale."

The defendants in a supplemental answer, alleged, that the crippled slave was " *a runaway and great thief.*" The proof supported this allegation. It also appeared from the testimo-

ny of several witnesses, that the other slave was sickly and incapable of rendering much service.

The conversations of two or three persons with Brown, before, and at the time of the sale, were introduced in evidence, to show that he was apprised by a physician, who examined the slaves, that they were defective, on account of redhibitory vices. This testimony was excepted to by the defendants.

There was no tender of the slaves in accordance with the prayer for a rescission of the sale. The jury returned a verdict for the plaintiff. After an unsuccessful effort to obtain a new trial, judgment was rendered in conformity to the verdict. The defendants appealed.

*Winn* for the plaintiff.

1. The defendants have never tendered the slaves, in order to have a rescission of the sale, and it is now out of their power to return them. They cannot claim a rescission of the sale, before this is done; until the vendee offer to return the slave, he cannot have an action for the price, and by consequence, for the rescission of the sale. 4 *La. Reports*, 198.

2. It appears by Stafford's testimony, that Mr. Grimball, (one of the heirs) told him to tell the crier, that one of the slaves was not sound, which was proclaimed by the crier. Now the Code declares, that the buyer cannot maintain the redhibitory action, if the seller has declared the vice to him before, or at the time of the sale. *La. Code*, 2498.

3. Testimonial proof is admissible and competent evidence of the declarations of a vendor or seller at a sale. This part of the Code has been adjudicated on by this court. *La. Code*, 2498. 6 *Martin, N. S.* 539.

4. The testimony of Stafford goes fully to show the slaves were unsound, and sold and declared to be so, at the sale. He expressly says, he would have bid three hundred dollars more, for one of them, had he been sound.

5. The auctioneer was, in this sale, the agent of the estate of Grimball, acting too as a ministerial officer, making a probate sale, and for all legal purposes, in reference to the present case, was the seller.

6. Heirs are subject to the same legal warranty, to which a vendor is subject, and they ought not to be precluded from showing, by testimonial proof, that the redhibitory defects were declared to the buyer, at and before the sale. *La. Code,* 2602, *vide also, chap.* 10, § 2, *under the title of sale.*

7. The provisions of the Code, which require that the vendor or seller, shall give to the auctioneer in writing, the conditions and terms of sale, who is to proclaim them, do not exclude the privilege conferred by article 2458, of showing, by testimonial proof, that the redhibitory defects were declared. *La. Code,* 2584.

8. Redhibition is defined to be the avoidance of a sale, on account of some defect or vice in the thing sold, that it must be supposed the buyer would not have purchased, had he known the vice. The *argumentum in contrario sensu,* forces the construction, that if the buyer did know of the existence of the defects, and purchased with his eyes open, he must abide the consequences. Testimonial proof is admissible to show this knowledge in the buyer, and which is shown in this case.

*Flint,* for the defendants, insisted, that testimonial proof could not be received, to contradict the *procès verbal,* or written sale of these slaves. There is no mention made of the redhibitory defects being declared by the seller or auctioneer, in the *procès verbal* of this sale, which must be conclusive on this point.

2. It was not necessary to tender the slaves expressly, in praying for a rescission of the sale. In answering to the suit, a tender is necessarily involved, when a rescission of the sale is claimed and set up in the defence.

*Martin J.,* delivered the opinion of the court.

The defendants being sued for the price of two slaves, purchased by Brown, at the sale of Thomas Grimball's estate, by order of the judge of probates, resisted the claim, on account of alleged redhibitory defects and vices in the slaves

thus purchased.   Judgment was rendered against them for the amount claimed, and they appealed.

WESTERN DIST.
October, 1834.

HAWKINS
vs.
BROWN ET ALS.

The counsel for the defendants and appellants, has drawn the attention of the court, to a bill of exceptions taken to the admission of evidence, of the declarations of a person, whom the parish judge called to his aid at the sale, as a crier ; and of conversations of several persons, with one of the defendants, while the sale was actually going on.

The counsel for the plaintiff contends, that the declarations of the crier were properly admitted, as they were made in presence of the parish judge, and by the directions of a person by the name of Grimball, whom he alleges, was one of the heirs.

The Louisiana Code, article 2498 provides, that, the vendee cannot urge redhibitory defects, which were made known to him by the vendor, at or before the time of sale ; and authorises parole evidence of these declarations.

Redhibitory defects or vices which are made known by the vendor to the vendee, at or before the sale, cannot be urged in avoidance, or in any manner set up against the sale.
Parole evidence is admissible to prove the declarations of a vendor in relation to the redhibitory vices of slaves at or before the sale.

The plaintiff further contends, that the parish judge, acting as auctioneer, was the agent of the vendor, and as such, his declarations are those of the latter ; that an auctioneer may employ a crier, whose statements proclaimed and declared to the bystanders or the company, are considered as proclaimed by the auctioneer himself, and consequently by the vendor, whose agent the auctioneer is, in such cases.

The Louisiana Code, article 2495, requires the auctioneer, after having received the conditions of the sale in writing, from the person offering the property for sale, to read and proclaim them in a loud and audible voice to the company, and then invite bids in conformity to those conditions.

It is the duty of auctioneers to receive the conditions of a sale in writing from the vendor, and to read and proclaim them in a loud and audible voice to the bystanders, and invite bids in conformity therewith.

Auctioneers, especially those living out of New-Orleans, and in the several parishes where there is no auctioneer but the parish judge, are not, strictly speaking, the chosen, though they may be the legal agents of the vendor ; and we doubt whether they be more than the legal agents, in places in which there are two or more auctioneers.   The mere legal agent, has no authority, but that which the law confers.

The mere legal agent appointed to sell property by authority of law, has no powers but those conferred by law.

The written conditions, which the Louisiana Code seems to require, cannot certainly be changed, without the posterior

WESTERN DIST.
October, 1834.

HAWKINS
*vs.*
BROWN ET ALS.

act of the vendor; and he who contends, that such *an act* has taken place, must show it.

In the present case, it appears, that the parish judge called on a person then present, to aid him in crying the sale. It is also shown, that a person by the name of *Grimball*, who was present at the same time, directed that the crier might proclaim and declare to the company, the redhibitory defects in the slaves, which are now complained of, and which he did, in the presence of the parish judge.

*The administrator of an estate is the legal vendor of the property at probate sale, whose declarations are to govern in regard to its conditions and terms, and the legal warranty resulting therefrom.*

The sale was provoked by Hawkins, the administrator of Grimball's estate, of which the slaves in question constituted a part. The auctioneer or parish judge, was bound to read and proclaim the written conditions of sale, given to him by Hawkins, the administrator. It is to them we are to look, in order to ascertain whether the legal warranty, on which the defendants rely, and claim the benefit, was excluded or not. The administrator was the vendor. His sale, it is true, bound the heirs of Grimball to the legal warranty ; but this court is not ready to say, that if any of the heirs had directed the declarations, concerning the redhibitory vices to be made by the auctioneer or crier, the purchaser would not have been bound thereby. But we are compelled to say, that no declaration made by a stranger, can have the same effect.

*The sale of property legally made by the administrator binds the heirs in warranty.*

*The conversations of bystanders at a probate sale with a purchaser, in which he is apprised of redhibitory vices in the property before it is bid off, will not be admitted to exclude the legal warranty claimed, unless they go to establish the fact that the redhibitory vices complained of had been declared by the vendor to the purchaser.*

The conversations of bystanders, with either of the defendants, were in the opinion of the court, improperly admitted to exclude the legal warranty relied on, and the benefit of which is claimed by the defendants, unless they tended to establish the fact, that the redhibitory vices complained of, had been declared by the vendor to the defendants.

In all cases of a trial by jury, the party claiming it, is entitled to a verdict, uninfluenced by illegal evidence. According to this principle, the case must be remanded for another trial. This renders it unnecessary for the court, in the present state of the case, to examine any of the other questions or points of law, arising in the cause.

*The crier's declarations at a probate sale unauthorised by the vendor, are inadmissible in evidence to show the buyer was thereby apprised*

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and

reversed; the verdict set aside, with directions to the court, not to allow parole evidence of the crier's declarations, unauthorised by the vendor, or of the conversations of bystanders, with the defendants, unless they tend to show, that the redhibitory defects and vices in the slaves, were declared by the vendor to the vendee, before, or at the time of the sale; the costs of the appeal to be borne by the plaintiff and appellee.